**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

_____
                                                      )
SECURITIES AND EXCHANGE                )
COMMISSION,                                      )
                                                      )
                        Plaintiff,               )          **Civil Action No. 12-cv-7261 (TPG)**
                                                      )
                                                      )
            v.                                       )
                                                      )
8000, INC., JONATHAN E. BRYANT,    )
THOMAS J. KELLY, and CARL N. DUNCAN,  )
                                                      )
                        Defendants.            )
                                                      )
_____)

**SECURITIES AND EXCHANGE COMMISSION'S MEMORADUN IN**
**<u>SUPPORT OFMOTION REQUESTING REMEDIES AGAINST THOMAS KELLY</u>**

Deena R. Bernstein (BBO #558721)
 Senior Trial Counsel
Securities & Exchange Commission
33 Arch Street, 23rd Floor
Boston, Massachusetts 02110
(617) 573-8813 (Bernstein)
(617) 573-4590 (Facsimile)

September 16, 2013

# Table of Contents

HISTORY OF LITIGATION ............................................................................................... 1

   I.   Background .............................................................................................................. 1

   II.   Settlement Terms .................................................................................................... 1

   III.   Factual background ................................................................................................ 2

SUMMARY OF PROPOSED REMEDIES ........................................................................ 4

LEGAL ARGUMUENT ...................................................................................................... 5

   I.   Burden of Proof ...................................................................................................... 5

   II.   Kelly Should Pay Disgorgement and Prejudgment Interest. ................................ 5

   III.   Kelly Should Pay a Third Tier Penalty. ................................................................ 8

CONCLUSION .................................................................................................................... 12

# TABLE OF AUTHORITIES

**Cases**

*SEC v. Altomare*, 300 Fed. Appx. 70 (2d Cir. 2008) ................................................... 10

*SEC v. Benson*, 657 F. Supp. 1122 (S.D.N.Y. 1987) .................................................... 6

*SEC v. Cavanagh*, 2004 WL 1594818 (S.D.N.Y. July 16, 2004) ................................. 9

*SEC v. Coates*, 137 F. Supp. 2d 413 (S.D.N.Y. 2001)................................................. 11

*SEC v. Colonial Inv. Mgmt. LLC*, 659 F. Supp. 2d  467 (S.D.N.Y 2009) ................... 11

*SEC v. Conaway*, 697 F. Supp. 2d 733 (E.D. Mich. 2010)........................................ 5, 8

*SEC v. Converge Global, Inc.* 2006 WL 907567 (S.D. Fla. March 10, 2006 .............. 9

*SEC v. Druffner*, 517 F. Supp. 2d 502 (D. Mass. 2007) .............................................. 7

*SEC v. First Jersey Secs., Inc.*(2d Cir.1996)................................................................ 5

*SEC v. Global Telecom Servs.*, 325 F.Supp.2d 941 (D. Conn.  2004)........................ 10

*SEC v. Happ.*  295 F. Supp. 2d 189 (D. Mass. 2003) .................................................. 5

*SEC v. Hughes Capital Corp.,* 917 F. Supp. 108 (D.N.J. 1996) ................................. 6

*SEC v. Inorganic Recycling Corp,* 2002 WL 1968341 (S.D.N.Y. Aug. 23, 2002) ................. 6, 10

*SEC v. Kenton Cap., Ltd,* 69 F. Supp. 2d 1, 17(D.D.C. 1998)............................... 7, 8, 11

*SEC v. Kern*, 425 F.3d 143 (2d Cir. 2005).................................................................... 9

*SEC v. Lazare Industs., Inc.*, 294 Fed. Appx. 711 (3d Cir. 2008) .............................. 11

*SEC v. Levine*, 517 F. Supp. 2d 121 (D.D.C. 2007) .................................................... 7

*SEC v. Lybrand*, 281 F. Supp. 2d 726 (S.D.N.Y. 2003) .......................................... 9, 10

*SEC v. Manor Nursing Ctrs., Inc.*, 458 F.2d 1082, (2d Cir. 1972) ............................. 7

*SEC v. Michel*, 2008 WL 516369 (N.D. Ill. 2008) .............................................. 10-11

*SEC v. Moran*, 922 F. Supp. 867 (S.D.N.Y. 1996)...................................................... 5

*SEC v. Moran*, 944 F. Supp. 286 (S.D.N.Y. 1996)...................................................... 8

*SEC v. Musella*, 818 F. Supp. 600 (S.D.N.Y. 1993) ................................................... 6

*SEC v. Patel*, 61 F.3d 137 (2d Cir. 1995) .................................................................... 5

*SEC v. Pentagon Capital Mgmt. PLC*, 844 F. Supp. 2d 377 (S.D.N.Y. 2012)............ 9

*SEC v. Robinson,* 2002 WL 1552049 (S.D.N.Y. July 16, 2002) ................................. 6

*SEC v. Rosenfeld*, 2001 WL 118612 (S.D.N.Y. Jan. 9, 2001 ..................................... 6

*SEC v. Rosenthal*, 426 Fed. App'x. 1 (2d Cir. 2011).................................................. 9

*SEC v. Svoboda*, 409 F. Supp .2d 331 (S.D.N.Y. 2006) ........................................... 11

*SEC v. Thomas James Associates*, 738 F. Supp. 88 (W.D.N.Y. 1990)........................ 6

*SEC v. Todt*, 2000 WL 223836 (S.D.N.Y. Feb. 25, 2000).......................................... 11

*SEC v. Tome*, 833 F.2d 1086 (2d Cir. 1987)................................................................ 7

*SEC v. Universal Express, Inc.,* 475 F. Supp. 2d 412 (S.D.N.Y. 2007) ..................... 10

*Steadman v. SEC,* 450 U.S. 91 (1981) ......................................................................... 5

**Statutes**

15 U.S.C. § 77t(d).................................................................................................. *passim*

15 U.S.C. § 78u(d).................................................................................................. *passim*

26 U.S.C. § 6621(a)(2)............................................................................................... 2, 7

**Regulations**

17 C.F.R. § 201.1004 ................................................................................................... 9

<u>HISTORY OF LITIGATION</u>

I.      <u>BACKGROUND</u>

In September 2012, plaintiff Securities and Exchange Commission ("Commission") filed a civil injunctive action against 8000, Inc. ("EIGH"), Jonathan Bryant ("Bryant"), Thomas Kelly ("Kelly"), and Carl Duncan ("Duncan") (collectively "Defendants").  The Complaint alleged that from November 2009 through October 2010 ("relevant period") defendants participated in a scheme to inflate the price of EIGH stock through increased trading and to profit from that price rise.  *See* Complaint ¶ 1.  During the relevant period Kelly obtained $ 415,592 in profits from the scheme.

On May 31, 2013, the Commission and Kelly submitted a proposed Judgment to this Court in partial settlement of the claims against Kelly.  (5/31/2013 Bernstein Email to Judgments@nys.uscourts.com, Ex. 1.)  On June 6, 2013 the Court entered the Judgment.[1]  (ECF 22.)

II.     <u>SETTLEMENT TERMS</u>

Pursuant to the Consent and Final Judgment, Kelly has agreed to a permanent injunction forbidding further violations of the statutes allegedly violated in the Complaint, a permanent officer and director bar, and a permanent penny stock bar.  (Ex.1, ECF 22.)  In addition, Kelly has agreed that "the Court shall order disgorgement of ill-gotten gains, prejudgment interest thereon, and a civil penalty pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)" and that the "Court shall determine the amounts of the disgorgement and civil penalty upon motion of the Commission and full briefing by the parties as contemplated by Local Rule 6.1.(b) and after a holding a

---

[1] Simultaneous to the filing of the Complaint, the Commission and Duncan submitted a proposed Final Judgment to this court to settle claims against Duncan. (Ex. 2)  On December 7, 2012, the Court entered Final Judgment against Duncan.  (ECF 9.)  On June 28, 2013, the Commission also filed Motion for Entry of Judgment against EIGH for failure to answer or otherwise defend claims asserted against it.  (ECF 23.)

hearing on these issues." (ECF 22 ¶ V.) The Judgment further provides that "[p]rejudgment interest shall be calculated based on the rate of interest used by the Internal Revenue Service for the underpayment of federal income tax set forth in 26 U.S.C. § 6621(a)(2). (*Id.*) Finally, the Judgment provides that, in connection with the Commission's motion for such monetary remedies:

> (a) Defendant will be precluded from arguing that he did not violate the federal securities laws as alleged in the Complaint; (b) Defendant may not challenge the validity of the Consent or this Judgment; (c) solely for the purposes of such motion, the allegations of the Complaint shall be accepted as and deemed true by the Court; and (d) the Court may determine the issues raised in the motion on the basis of affidavits, declarations, excerpts of sworn deposition or investigative testimony, and documentary evidence, without regard to the standards for summary judgment contained in Rule 56(c) of the Federal Rules of Civil Procedure.

(ECF 22¶ V.)

## III.   FACTUAL BACKGROUND

The Complaint alleged that in October 2009, Kelly was part of a scheme to inflate the volume of trading of EIGH and to profit from that rise. At that time as part of a change in control of the company, Kelly became the Chief Executive Officer ("CEO") of EIGH. (Compl. ¶¶ 1, 25.) Over the twelve months through the issuance of false press releases and communications, Kelly and the other defendants increased the company's stock price as they sold the company's securities into the market. (*Id.* ¶ 3.) Between November 2009 and October 2010, the company's stock price increased from less than $.01per share to $.42 per share. (*Id.*) Kelly profited through the EIGH share price increase by selling EIGH shares.

Specifically, over the course of that year, Kelly took part in the review and issuance of at least nine false EIGH press releases to inflate the price of EIGH securities. (*Id.* ¶¶ 26-36, 38.) On December 16, 2009, Kelly caused EIGH to issue a press release that it had acquired the

Southbridge Development Group, Inc. ("Southbridge"), a real estate development company located in Alpharetta, Georgia.  (*Id*. ¶ 30.)  In fact, EIGH never acquired that company.  (*Id*. ¶ 31.)  In that press release, EIGH also falsely represented that Southbridge had contracts delivering $25 million in gross revenue.  The project, however, was only in the developmental stage and not generating any revenues.  (*Id*. ¶ 33.)

On January 14, 2010, Kelly caused EIGH to issue a press release representing that the Breitinger Agency, a company purportedly acquired by EIGH, was targeting $1 million in revenues that year.  (*Id*. ¶ 35.)  On February 5, 2010, Kelly caused EIGH to issue another press release that Skyvillas Realty, Inc., a real estate company that EIGH had also purportedly acquired, had closed contracts for the sale of $10 million worth property and had pending sales of $5.6 million.  However, Kelly had no basis or support for the forecasts made.  (*Id*. ¶ 35.)

Kelly also caused EIGH to falsely represent that it had access to $75 million in capital financing.  (*Id*. ¶ 28.)  Further on February 23, 2010, Kelly caused EIGH to announce that it was drawing down $10 million from that capital financing.  (*Id*.)  In fact, EIGH never had any capital financing and never drew funds down from any loan or credit line.  (*Id*.)  On March 2, 2013, Kelly caused EIGH to issue a press release that EIGH had purchased six residential properties in the United States valued at $1.5 million.  EIGH has never acquired real estate in the United States.  (*Id*. ¶ 29.)

 In September 2009, Kelly caused EIGH to accelerate the pace of issuing false press releases.  On September 15, and September 17, 2010,  Kelly caused EIGH to issue two press releases regarding an entity "Monk's Den."  The press releases falsely represented that EIGH had acquired the entity (*Id*. ¶¶ 30-31, 34.)  The press releases also falsely forecasted that EIGH would derive first $5 million and then $10 million in revenue from Monk's Den.  (*Id*. ¶ 34.)

3

On or about September 16, 2010,  Kelly caused EIGH to issue a press release that it would issue a $.10 a share dividend.  (Id. ¶ 36; 9/16/2010 Press Release, Ex. 3.)  Later, on September 28, 2010, Kelly caused EIGH to issue yet another press release promising the dividend and representing that the company could afford it because of a $40 million windfall. EIGH never paid the dividend and there never was any $40 million windfall.  (9/28/2010 Press Release, Ex. 4; Compl. ¶ 38.)  On October 14, 2010, Kelly caused EIGH to issue a press release falsely claiming that, because EIGH improperly recognized the purported windfall, it was unable to provide a dividend.  (Compl. ¶ 38.)

In sum, from November 2009 through October 2010, Kelly inflated the stock price of EIGH through the issuance of numerous false releases that he knew or was reckless in not knowing were false.  Kelly then personally benefited from the issuance of those press releases through the sale of EIGH shares while the share price was inflated

## SUMMARY OF PROPOSED REMEDIES

The Commission seeks two types of monetary relief to hold Kelly financially responsible for the consequences of his actions: (i) disgorgement of ill-gotten gains plus prejudgment interest thereon, and (ii) a civil monetary penalty.

Specifically, the SEC requests an order requiring:

(1) Kelly to disgorge the full amount of his $ 415,592 with prejudgment interest of $46, 697 for a total of $462,289; and

(2)  Kelly to pay a civil penalty.

4

## LEGAL ARGUMUENT

### I.    BURDEN OF PROOF

The standard of proof for imposing sanctions against securities law violators is "preponderance of the evidence." *Steadman v. SEC,* 450 U.S. 91, 103 (1981) (Commission administrative proceeding); *SEC v. Moran*, 922 F. Supp. 867, 888 (S.D.N.Y. 1996); *SEC v. Conaway*, 697 F. Supp. 2d 733, 745 (E.D. Mich. 2010) (citations omitted).

Pursuant to the Consent and Final Judgment entered in this case in connection with the Commission's request for remedies and at any hearing held on this issue:  (a) Defendant will be precluded from arguing that he did not violate the federal securities laws as alleged in the Complaint; (b) Defendant may not challenge the validity of the Consent or this Judgment; (c) solely for the purposes of such motion, the allegations of the Complaint shall be accepted as and deemed true by the Court; and (d) the Court may determine the issues raised in the motion on the basis of affidavits, declarations, excerpts of sworn deposition or investigative testimony, and documentary evidence, without regard to the standards for summary judgment contained in Rule 56(c) of the Federal Rules of Civil Procedure.

### II.   KELLY SHOULD PAY DISGORGEMENT AND PREJUDGMENT INTEREST.

This Court has broad equity powers to order the disgorgement of "ill-gotten gains" obtained through violation of the securities laws. *See SEC v. First Jersey Secs., Inc.*, 101 F.3d 1450, 1474 (2d Cir. 1996).  As an exercise of its equity powers, the Court may order wrongdoers to disgorge their fraudulently obtained profits.  *See SEC v. Patel*, 61 F.3d 137, 139 (2d Cir. 1995).  Disgorgement "does not serve to punish or fine the wrongdoer, but simply serves to prevent the unjust enrichment." *SEC v. Happ*, 295 F. Supp. 2d 189, 197 (D. Mass. 2003), *aff'd*, 392 F.3d 12 (1st Cir. 2004).  The Court need not trace every dollar of offering proceeds

5

fraudulently obtained by defendants but only find a reasonable approximation of gains. *See First Jersey Secs., Inc.*, 101 F.3d at 1475; *SEC v. Hughes Capital Corp.*, 917 F. Supp. 1080, 1085 (D.N.J. 1996), *aff'd*, 124 F.3d 449, 451 (3d Cir. 1997).

Financial hardship is not relevant to considering amount of disgorgement. *SEC v. Inorganic Recycling Corp,* 2002 WL 1968341, at *2 (S.D.N.Y. Aug. 23, 2002) ("Financial hardship does not preclude imposition of an order of disgorgement"); *SEC v Universal Express, Inc.*, 646 F. Supp. 2d 552, 565 (S.D.N.Y. 2009) ("court is not bound to consider a defendant's claims of financial hardship"). "The fact that swindlers have run through the proceeds of the fraud and are now insolvent should not prevent the imposition of a remedy, since defendants may 'subsequently acquire the means to satisfy the judgment.'" *Inorganic Recycling Corp.,* 2002 WL 1968341, at *2 (citation omitted)*; accord SEC v. Robinson,* 2002 WL 1552049, at *8 (S.D.N.Y. July 16, 2002) ("disgorgement judgment is appropriate 'despite a defendant's inability to pay, given that the defendant may subsequently acquire the means to satisfy the judgment'"), *supplemented by* 2002 WL 1729559 (S.D.N.Y. July 23, 2002). "Nor may a securities law violator avoid or diminish his responsibility to return his ill-gotten gains by establishing that he is no longer in possession of such funds due to subsequent unsuccessful investments or other forms of discretionary spending." *SEC v. Thomas James Associates*, 738 F. Supp. 88, 94 (W.D.N.Y. 1990). Nor can a defendant avoid disgorgement by claiming it would diminish his income or his standard of living. *SEC v. Musella*, 818 F. Supp. 600, 602-04 (S.D.N.Y. 1993). It is also "irrelevant for disgorgement purposes, how the defendant chose to dispose of the ill-gotten gains." *SEC v. Rosenfeld*, 2001 WL 118612, at *2 (S.D.N.Y. Jan. 9, 2001); *accord SEC v. Benson*, 657 F. Supp. 1122, 1134 (S.D.N.Y. 1987).

Disgorgement is an equitable remedy designed to compel defendants to "give up the

6

amount by which [they were] unjustly enriched." *SEC v. Tome*, 833 F.2d 1086, 1096 (2d Cir. 1987) (citation omitted).  "The effective enforcement of the federal securities laws requires that the SEC be able to make violations unprofitable." *SEC v. Manor Nursing Ctrs., Inc.*, 458 F.2d 1082, 1103-04 (2d Cir. 1972); *see also SEC v. Druffner*, 517 F. Supp. 2d 502, 511 (D. Mass. 2007).

In this case Kelly obtained $415,592 in ill-gotten gains through profits that he obtained by purchasing shares of EIGH at a low price, issuing false press releases artificially inflating the price of EIGH securities, and then selling them at a profit.  As detailed in the attached declaration of forensic accountant Mark Albers, the Commission reviewed the trading of Kelly in his main brokerage account at Charles Schwab.  (Declaration of Mark Albers ("Albers Dec.") ¶¶ 6-8.)  The Commission calculated the proceeds of sales of EIGH stock in that account from October 23, 20009 (when Kelly became CEO of EIGH) to October 12, 2010 (the date of his last trade) and using the First-In-First-Out ("FIFO") method, subtracted out the cost of those shares (*Id*. ¶¶ 9-11.)  Kelly sold 6,733,155 EIGH shares during that time period for proceeds of $427,637.  The cost basis of those shares was $12,046.  (*Id*. ¶ 12.) for a net profit of $ 415,592. (*Id*. ¶ 13.)

In addition, the Commission seeks prejudgment interest on Kelly's ill-gotten gains.  To preclude defendants from enjoying an interest-free loan on their illicitly-obtained gains, courts have required them to pay interest on the amounts they disgorge." *SEC v. Levine*, 517 F. Supp. 2d 121, 141 (D.D.C. 2007) (citing *SEC v. Kenton Cap., Ltd.*, 69 F. Supp. 2d 1, 16-17 (D.D.C. 1998)).  Kelly agreed that prejudgment interest would be calculated from the date of the violation based on the rate of interest used by the Internal Revenue Service for the underpayment of federal income tax set forth in 26 U.S.C. § 6621(a)(2).  (ECF 22 ¶ V.)  Here as evidenced in the

attached declaration, the Commission seeks $46,697 in prejudgment interest[2] for a total of

$ 462,289 in disgorgement and interest.  (Albers Dec. ¶ 14.)

## III.     KELLY SHOULD PAY A THIRD TIER PENALTY.

As authorized by Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d), and Section

21(d) of the Exchange Act, 15 U.S.C. § 78u(d), the Commission seeks civil penalties against

Kelly.  Civil penalties were enacted by Congress "'to achieve the dual goals of punishment of the

individual violator and deterrence of future violations.'"  *Kenton Capital, Ltd.*, 69 F. Supp. 2d at

17 (quoting *SEC v. Moran*, 944 F. Supp. 286, 296 (S.D.N.Y. 1996)); *see also Conaway*, 697 F.

Supp. 2d at 747-48 (Congress determined civil penalty necessary for effective deterrence).  The

legislative history of Section 21(d) reflects that Congress believed civil penalties were necessary

because:

> [d]isgorgement merely requires the return of wrongfully obtained profits; it does not result in any actual economic penalty or act as a financial disincentive to engage in securities fraud. A violator who avoids detection is able to keep the profits resulting from illicit activities. Currently, even a violator who is caught is required merely to give back his gains with interest, leaving him no worse off financially than if he had not violated the law. The Committee therefore concluded that authority to seek or impose substantial money penalties, in addition to the disgorgement of profits, is necessary for the deterrence of securities law violations that otherwise may provide great financial returns to the violator.

H.R. Rep. No. 101-616 (1990), *reprinted in* 1990 U.S.C.C.A.N. 1379, 1384–86, 1990 WL

256464.

Section 20(d) of the Securities Act and Section 21(d) of the Exchange Act establish three

tiers of penalties.  15 U.S.C. § 77t(d)(2); 15 U.S.C. § 78u(d)(3).  *See generally SEC v. Rosenfeld*,

2001 WL 118612, at *4 (S.D.N.Y. Jan. 9, 2001).  Of most relevance here, Section 20(d)(2)(C) of

---

2 Prejudgment interest was calculated from the quarter with each profitable sale of securities occurred.

the Securities Act and Section 21(d)(3)(B)(iii) of the Exchange Act contemplates that a third tier penalty – which is the *greater* of gross pecuniary gain or $150,000 per violation for a person and $725,000 per violation for an entity[3] – is appropriate when "the violation . . . involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement; and . . . such violation directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons." 15 U.S.C. § 77t(d)(2)(c); 15 U.S.C. § 78u(d)(3)(B)(iii). Here, the gross pecuniary gain received by Kelly is $415, 592.

   "The amount of the penalty shall be determined by the court in light of the facts and circumstances." 15 U.S.C. § 77t(d)(2)(A); 15 U.S.C. § 78u(d)(3). *See also SEC v. Pentagon Capital Mgmt. PLC*, 844 F. Supp. 2d 377, 427 (S.D.N.Y. 2012) (assessing penalty based on facts and circumstances), *aff'd rel. part* . 2013 WL 4017028 (2d Cir. Aug. 8, 2013). Courts have looked to the following factors, among others, to determine the reasonableness of a penalty: (1) the seriousness of the violations; (2) the defendant's scienter; (3) the repeated nature of the violations; (4) whether the defendant has admitted wrongdoing; (5) the losses or risk of losses caused by the conduct; (6) any cooperation provided to enforcement authorities; and (7) ability to pay. *SEC v. Rosenthal*, 426 Fed. Appx. 1, 4 (2d Cir. 2011); *SEC v. Converge Global, Inc.*, No. 04-80841CV, 2006 WL 907567, at *6 (S.D. Fla. Mar. 10, 2006); *SEC v. Cavanagh*, , 2004 WL 1594818, at *31 (S.D.N.Y. July 16, 2004); *SEC v. Lybrand*, 281 F. Supp. 2d 726, 730 (S.D.N.Y. 2003), *aff'd sub nom SEC v. Kern*, 425 F.3d 143 (2d Cir. 2005).

   Here, almost every factor supports a significant penalty against Kelly. As described above, there is no question Kelly engaged in serious violations of the federal securities laws by

---

3  Although the statute originally provided for penalties of $100,000 for a person and $500,000 for an entity, those amounts have increased to $150,000 and $725,000 for violations after March 3, 2009, the time period for all the conduct charged against Kelly. *See* 17 C.F.R. § 201.1004.

9

repeatedly causing EIGH to issue numerous false press releases with the express purpose of

causing investors to invest in a company under false pretenses.  First, Kelly's scheme involved

repeated misrepresentations over the period of a year.  *See SEC v. Universal Express, Inc.,* 475 F.

Supp. 2d 412, 426-27, 429 (S.D.N.Y. 2007) (third-tier penalties appropriate where "defendants

engaged in numerous and inexcusable instances of securities law violations over the course of at

least four years"), *aff'd, sub nom. SEC v. Altomare*, 300 Fed. Appx. 70 (2d Cir. 2008); *Lybrand*,

281 F.Supp.2d, at 731 (third-tier penalties awarded) ("Far from being an isolated event, the

actions of these men involved a multitude of improper securities transactions that occurred over

several months – they violated the securities laws repeatedly and with regularity."); *SEC v.*

*Global Telecom Servs.*, 325 F. Supp. 2d 94, 121 (D. Conn.  2004) (third-tier penalties awarded).

The repeated nature of his violations suggests a high degree of scienter.  Kelly's actions were not

a one-time error in judgment but rather a regular pattern over the course of a year.

Last, Kelly should not  avoid a civil penalty by claiming lack of money.   This non-

dispositive factor, at most, allows the Court discretion to lower the third-tier penalty that would

otherwise be appropriate.

> [Defendant's] claims of poverty cannot defeat the imposition of a disgorgement
> order or civil penalty.  Perhaps, if [defendant] is indeed impecunious, the SEC
> will eventually prove unable to collect on any judgment.  But to withhold the
> remedy of disgorgement or penalty simply because a swindler claims that she has
> already spent all the loot and cannot pay would not serve the purposes of the
> securities laws. An order of disgorgement and civil penalty are both proper
> remedies in this case; the future will tell whether the SEC can find assets to levy
> upon. . . . . As noted above, the Court has already taken defendant's financial
> situation into account in setting the amount of the civil penalty substantially lower
> than would otherwise be appropriate.

*Inorganic Recycling Corp.,* 2002 WL 1968341, at *4; *accord SEC v. Michel*, 2008 WL 516369,

at *3 (N.D. Ill. 2008) ($416,821 civil penalty where defendant had no current income and

numerous debts, but had home equity and retirement accounts); *SEC v. Svoboda*, 409 F. Supp .2d
331, 348 (S.D.N.Y. 2006) ($150,000 civil penalty on defendant who represented that his sole
remaining asset was an IRA worth $690,000 and $250,000 civil penalty on defendant who
represented his net worth was $45,450).

Moreover, Kelly violated the securities laws multiple times for purposes of calculating a
penalty.  Courts have determined that a "violation" encompasses each instance that a defendant
has acted to violate the securities laws.  *See, e.g., SEC v. Lazare Indus., Inc.*, 294 Fed. Appx.
711, 715 (3d Cir. 2008) (for purposes of assessing reasonableness of district court's assessment
of $500,000 penalty, court considered each sale of unregistered stock as a separate violation);
*SEC v. Colonial Inv. Mgmt. LLC*, 659 F. Supp. 2d  467, 503 (S.D.N.Y 2009) (using eighteen
violations of the same regulation to calculate penalty); *SEC v. Coates*, 137 F. Supp. 2d 413, 428–
29 (S.D.N.Y. 2001) (calculating penalty by multiplying number of misrepresentations by
statutory penalty amount); *SEC v. Todt*, 2000 WL 223836, at *12-13 (S.D.N.Y. Feb. 25, 2000)
(assessing four second tier violations, one for each attempted sale of forged security); *Kenton
Capital*, 69 F. Supp. 2d at 17 n.15 (assessing a third tier penalty of $1.2 million against defendant
by multiplying the maximum statutory third tier penalty at the time ($100,000) by the number of
investors who received misrepresentations (twelve)).

Here, Kelly caused multiple "violations" for purposes of the Remedies Act.  Each time
that Kelly caused EIGH to issue a press release could be considered a separate violation of
Section 17(a) of the Securities Act and Section 10(b) of the Exchange Act.  Thus, even assuming
that violating two provisions of the securities laws amounts to one violation, there could be as
many as nine violations of the securities laws.  Thus the record both as pecuniary loss and
number of violation supports a significant penalty.

11

## <u>CONCLUSION</u>

The Commission respectfully that this Court orders to disgorge $415,592 in ill-gotten gains plus prejudgment interest in the amount of $46,697 for a total of $462,289.  In addition, the Commission seeks that this Court orders an appropriate penalty.

> Respectfully submitted,
>
> SECURITIES AND EXCHANGE COMMISSION
>
> By its attorneys,
>
> /s/ Deena R. Bernstein
> Deena R. Bernstein (BBO # 558721)
> 33 Arch Street, 23rd Floor
> Boston, Massachusetts  02110
> Telephone:  (617) 573-8813(Bernstein direct)
> Facsimile:  (617) 573-4590
> E-mail:  BernsteinD@sec.gov

Dated:  September 16, 2013

**CERTIFICATE OF SERVICE**

I hereby certify that on September 16, 2013, I have served by ECF on all counsel of record.  I have also served Jonathan Bryant at his email address: jonathan@tbgfunds.com


/s Deena R. Bernstein
Deena R. Bernstein

13