**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**8000, INC., JONATHAN E. BRYANT, THOMAS J. KELLY, and CARL N. DUNCAN,**<br><br>**Defendants.** | **Civil Action No. 12-cv-7261 (TPG)** |

**SECURITIES AND EXCHANGE COMMISSION'S MEMORADUM IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT AGAINST 8000, INC.**

Deena R. Bernstein (BBO #558721)
Senior Trial Counsel
Securities & Exchange Commission
33 Arch Street, 23rd Floor
Boston, Massachusetts 02110
(617) 573-8813 (Bernstein)
(617) 573-4590 (Facsimile)

November 3, 2014

## Table of Contents

**PRELIMINARY STATEMENT** ..... 1
**PROCEDURAL BACKGROUND** ..... 1
**FACTUAL BACKGROUND** ..... 2
**DEFAULT JUDGMENT STANDARD** ..... 4
**LEGAL ARGUMENT** ..... 4
I. The Complaint Establishes EIGH's Liability Under the Anti-fraud Provisions ..... 5
A. EIGH "Made" Statements Pursuant to Section 10(b) and Rule 10b-5(b) thereunder of the Exchange Act. ..... 6
B. EIGH Obtained Money and Property Through Means of Its Direct Misstatements and By Means Of the Misstatements of Others in Violation of Section 17(a)(2). ..... 6
C. The Statements Made by EIGH Were Material. ..... 7
D. EIGH Employed Schemes that Violated Section 17(a)(1) & (3) and Section 10(b) and Rule 10b-5 Thereunder. ..... 7
E. EIGH Acted with Scienter. ..... 8
II. The Commission is Entitled to the Relief Sought ..... 9
A. Permanent Injunction ..... 9
B. Civil Money Penalty ..... 10
**CONCLUSION** ..... 14

## TABLE OF AUTHORITIES

### Cases

*Aaron v. SEC*, 446 U.S. 680 (1980) ........ 4, 5
*Au Bon Pain Corp. v. Artect, Inc.,* 653 F.2d 61 (2d Cir. 1981) ........ 4, 5
*Basic, Inc. v. Levinson*, 485 U.S. 224 (1988) ........ 5, 6
*Bermudez v. Reid*, 733 F.2d 18 (2d Cir. 1984) ........ 4
*Chill v. General Elec. Co.,* 101 F.3d 263 (2d Cir. 1996) ........ 8
*Ernst & Ernst v. Hochfelder*, 425 U.S. 185 (1976) ........ 8
*Finkel v. Romanowicz,* 577 F3d 79 (2d Cir 2009) ........ 4-5
*Flaks v. Koegel*, 504 F.2d 702 (2d Cir. 1974) ........ 5
*Ganino v. Citizens Utils. Co.,* 228 F.3d 154 (2d Cir. 2000) ........ 7
*In re Global Crossing, Ltd. Secs. Litig.,* 322 F. Supp. 2d 319 (S.D.N.Y. 2004) ........ 7-8
*Janus Capital Group v. First Derivative Traders*, 131 S.Ct. 2296 (2011) ........ 6
*Rolf v. Blyth, Eastman Dillon & Co..,* 570 F.2d 38 (2d Cir. 1978) ........ 8
*SEC v. Altomare*, 300 Fed. Appx. 70 (2d Cir. 2008) ........ 12
*SEC v. Amerindo Invest. Advisors, Inc..*, 2014 WL 2112032 (S.D.N.Y. May 6, 2014) ........ 10
*SEC v. Cavanagh*, 2004 WL 1594818 (S.D.N.Y. July 16, 2004) ........ 10, 12
*SEC v. Coates*, 137 F. Supp. 2d 413 (S.D.N.Y. 2001) ........ 13
*SEC v. Cole*, 2014 WL 4723306 (S.D.N.Y. Sept. 22, 2014); ........ 4, 5
*SEC v. Colonial Inv. Mgmt. LLC*, 659 F. Supp. 2d 467 (S.D.N.Y 2009) ........ 13
*SEC v. Commonwealth Chem. Sec. Inc.,* 574 F.2d 90 (2d Cir. 1978) ........ 9
*SEC v. Conaway*, 697 F. Supp. 2d 733 (E.D. Mich. 2010) ........ 10
*SEC v. Converge Global, Inc.* 2006 WL 907567 (S.D. Fla. March 10, 2006 ........ 12
*SEC v. Credit Bancorp, Ltd*, 195 F. Supp. 2d 475 (S.D.N.Y. 2002) ........ 6
*SEC v. Global Telecom Servs.*, 325 F.Supp. 2d 94 (D. Conn. 2004) ........ 12
*SEC v. Interlink Data Network of Los Angeles, Inc.*, 1993 WL 603274 (C.D. Cal. Nov. 15, 1993). ........ 9
*SEC v. Kenton Cap., LTD*, 69 F. Supp. 2d 1 (D.D.C. 1998) ........ 10, 13
*SEC v. Kern*, 425 F.3d 143 (2d Cir. 2005) ........ 12
*SEC v. KPMG LLP*, 412 F. Supp. 2d 349 (S.D.N.Y. 2006) ........ 5
*SEC v. Lazare Industs., Inc.*, 294 Fed. Appx. 711 (3d Cir. 2008) ........ 13
*SEC v. Lybrand*, 281 F. Supp. 2d 726 (S.D.N.Y. 2003) ........ 12
*SEC v Management Dynamics*, 515 F.2d 801 (2d Cir. 1975) ........ 9
*SEC v. Manor Nursing Ctrs., Inc.*, 458 F.2d 1082 (2d Cir. 1972) ........ 10
*SEC v. Moran*, 944 F. Supp. 286 (S.D.N.Y. 1996) ........ 10
*SEC v. Monarch Funding Corp.*, 192 F.3d 295 (2d Cir. 1999) ........ 6
*SEC v. N. Am. Research*, 424 F.2d 63 (2d Cir. 1970) ........ 5, 6
*SEC v. Patel*, 2009 WL 3151143 (D.N.H. 2009) ........ 8
*SEC v. Pentagon Capital Mgmt. PLC*, 844 F. Supp. 2d 377 (S.D.N.Y. 2012) ........ 11
*SEC v. Prater*, 296 F. Supp. 2d 210 (D. Conn. 2003) ........ 5
*SEC v. Rosenfeld*, 2001 WL 118612 (S.D.N.Y. Jan. 9, 2001) ........ 11
*SEC v. Rosenthal*, 426 Fed. App'x. 1 (2d Cir. 2011) ........ 12
*SEC v. Simpson Capital Mgmt.*, 586 F. Supp. 2d 196 (S.D.N.Y. 2008) ........ 5
*SEC v. Stoker*, 865 F. Supp. 2d. 457 (S.D.N.Y. 2012) ........ 7
*SEC v. Texas Gulf Sulphur Co.,* 401 F.2d 833 (2d Cir. 1968) ........ 7
*SEC v. Todt*, 2000 WL 223836 (S.D.N.Y. Feb. 25, 2000) ........ 13

*SEC v. Treadway*, 430 F. Supp. 2d 293, (S.D.N.Y. 2006) .......... 9
*SEC v. U.S. Enviromental, Inc.* 155 F.3d 107 (2d Cir. 1998) .......... 8-9
*SEC v. Universal Express, Inc.,* 475 F. Supp. 2d 412 (S.D.N.Y. 2007) .......... 6, 12
*SEC v. Universal Major Indus. Corp.*, 546 F.2d 1044 (2d Cir. 1976) .......... 10

**Statutes**

15 U.S.C. § 77q(a) .......... *passim*
15 U.S.C. § 77t(d) .......... *passim*
15 U.S.C. § 77t(d)(2) .......... *passim*
15 U.S.C. § 78j(b) .......... *passim*
15 U.S.C. § 78u(d) .......... *passim*

**Treatises**

10A Wright, Miller, & Kane, Federal Practice & Procedure § 2685 (3d ed. 1998) .......... 4

**Regulations**

17 C.F.R. § 201.1004 .......... 11
17 C.F.R. § 240.10b-5 .......... *passim*

## PRELIMINARY STATEMENT

Pursuant to Federal Rule of Civil Procedure 55(b)(2) and Local Rule 55.2(b), plaintiff Securities and Exchange Commission ("Commission") respectfully submits this memorandum of law in support of its motion for default judgment against defendant 8000, Inc. ("EIGH"). The Commission seeks a default judgment because EIGH failed to answer or otherwise defend the Commission's Complaint against it.

EIGH issued at least nine false press releases that had the effect of inflating the price of EIGH stock. EIGH also issued numerous financial reports that misrepresented the financial health of the company. Further, an officer and an agent of the company then benefited from the inflated stock by selling their shares of stock for a handsome profit.

Accordingly, the Commission respectfully requests that the Court enter a default judgment against EIGH for the following: 1) permanently enjoining it against violations of Section 17(a) of the Securities Act of 1933 ("Securities Act") and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 thereunder; and 2) ordering EIGH to pay an appropriate civil money penalty.

## PROCEDURAL BACKGROUND

In September 2012, the Commission filed a civil injunctive action against ("EIGH"), Jonathan Bryant ("Bryant"), Thomas Kelly ("Kelly"), and Carl Duncan ("Duncan") (collectively "Defendants"). The Complaint alleged that from November 2009 through October 2010 ("relevant period") Defendants participated in a scheme to inflate the price of EIGH stock through increased trading and to profit from that price rise. *See* Complaint ¶ 1. Upon institution of this lawsuit, defendant Duncan offered to settle the complaint. (Exhibit 1.) On December 7, 2012, this court entered judgment against Duncan. (ECF 9.) Defendants EIGH., Jonathan

Bryant and Kelly signed waivers of summons.[1] (ECF 6,7, 11.) On February 21, 2013, Kelly filed an answer. (ECF 16.) On March 15, 2013, Bryant filed an answer. (ECF 20.) EIGH never filed an answer. On June 26, 2013, the Commission moved for an entry of default pursuant to Federal Rule of Civil Procedure 55(a), which was entered on November 13, 2013. (ECF 23.)

## FACTUAL BACKGROUND

The Complaint alleged that, in October 2009, several officers of EIGH participated in a scheme to inflate the volume of trading of EIGH and to profit from that rise. At that time as part of a change in control of the company, Kelly became the Chief Executive Officer ("CEO") of EIGH. (Compl. ¶¶ 1, 25.) Over the next twelve months EIGH issued numerous false press releases and financial reports.

Specifically, over the course of that year, EIGH issued at least nine false press releases to inflate the price of its securities through the action of its CEO, Kelly and its agent, Bryant. (*Id.* ¶¶ 26-36, 38.) On December 16, 2009, EIGH issued a press release that it had acquired the Southbridge Development Group, Inc. ("Southbridge"), a real estate development company located in Alpharetta, Georgia. (*Id.* ¶ 30.) In fact, EIGH never acquired that company. (*Id.* ¶ 31.) In that press release, EIGH also falsely represented that Southbridge had contracts delivering $25 million in gross revenue. The project, however, was only in the developmental stage and not generating any revenues. (*Id.* ¶ 33.)

On January 14, 2010, EIGH issued a press release representing that the Breitinger Agency, a company purportedly acquired by EIGH, was targeting $1 million in revenues that year. (*Id.* ¶ 35.) On February 5, 2010, EIGH issued another press release that Skyvillas Realty,

1 Bryant signed the waiver of summons on behalf of EIGH, which was filed on January 7, 2013. (ECF 11.)

Inc., a real estate company that EIGH had also purportedly acquired, had closed contracts for the sale of $10 million worth property and had pending sales of $5.6 million. However, EIGH had no basis or support for the forecasts made. (*Id.* ¶ 35.)

EIGH also issued press releases that falsely represented that it had access to $75 million in capital financing. (*Id.* ¶ 28.) Further, on February 23, 2010, EIGH announced that it was drawing down $10 million from that capital financing. (*Id.*) In fact, EIGH never had any capital financing and never drew funds down from any loan or credit line. (*Id.*) On March 2, 2013, EIGH issued a press release that EIGH had purchased six residential properties in the United States valued at $1.5 million. EIGH has never acquired real estate in the United States. (*Id.* ¶ 29.)

In September 2009, EIGH accelerated the pace of issuing false press releases. On September 15, and September 17, 2010, it issued two press releases regarding an entity "Monk's Den." The press releases falsely represented that EIGH had acquired the entity (*Id.* ¶¶ 30-31, 34.) The press releases also falsely forecasted that EIGH would derive first $5 million and then $10 million in revenue from Monk's Den. (*Id.* ¶ 34.)

On or about September 16, 2010, EIGH issued a press release that it would issue a $.10 a share dividend. (Id.) Later, on September 28, 2010, EIGH issued yet another press release promising the dividend and representing that the company could afford it because of a $40 million windfall. EIGH never paid the dividend and there never was any $40 million windfall. (Compl. ¶ 38.) On October 14, 2010, EIGH issued a press release falsely claiming that, because EIGH improperly recognized the purported windfall, it was unable to provide a dividend. (Compl. ¶ 38.)

In addition, on November 7, 2009 and May 19, 2009, EIGH published financial reports

for the third quarter of 2009 and the first quarter of 2010 respectively, on OTC Markets stating that it had access to $75 million in capital financing although it never had access to that amount of financing. (Compl. ¶ 28.) In addition EIGH OTC Market financial reports for the three months ended March 31, 2010 and the three months ended June 30, 2010, stated revenue of $310,792 and $372,618, respectively even though EIGH had no real operations or revenue. (Compl. ¶ 32.)

In sum, from November 2009 through October 2010, EIGH inflated the stock price of EIGH through the issuance of numerous false releases and financial reports that it knew or was reckless in not knowing were false.

## DEFAULT JUDGMENT STANDARD

The entry of a default judgment is left to the "sound judicial discretion" of the court. 10A Wright, Miller, & Kane, *Federal Practice & Procedure* § 2685 (3d ed. 1998). Where, as here, a "party fails to respond [to an action], … the court is ordinarily justified in entering a judgment against the defaulting party." *Bermudez v. Reid*, 733 F.2d 18, 21 (2d Cir. 1984). In determining whether to enter a default judgment, the Court should accept as true all of the factual allegations in the Complaint, except those relating to damages. *See Finkel v Romanowicz,* 577 F3d 79, 84 (2d Cir 2009); *Au Bon Pain Corp. v. Artect, Inc.,* 653 F.2d 61, 65 (2d Cir. 1981); *SEC v. Cole*, 2014 WL 4723306, at *2 (S.D.N.Y. Sept. 22, 2014).

The "quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation." *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974). The Commission is "also entitled to all reasonable inferences from the evidence offered." *Au Bon Pain Corp.,* 653 F.2d at 65; *Cole*, 2014 WL 4723306, at *2.

## LEGAL ARGUMENT

## I. THE COMPLAINT ESTABLISHES EIGH'S LIABILITY UNDER THE ANTI-FRAUD PROVISIONS.

EIGH's issuance of numerous false releases and financial reports violated the anti-fraud provisions of the Securities law. Section 17(a) of the Securities Act prohibits, in the offer or sale of securities: (1) devices, schemes or artifices to defraud, (2) obtaining money or property by means of materially false or misleading statements, and (3) transactions, practices or courses of business that operate as a fraud or deceit. 15 U.S.C. § 77q(a). Section 10(b) of the Exchange Act and Rule 10b-5 hereunder prohibit any person, in connection with the purchase or sale of any security, from, directly or indirectly: 1) employing any device, scheme or artifice to defraud; (2) making any untrue statement of material fact or omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or (3) engaging in any transaction, practice or course of business that operates or would operate as a fraud or deceit upon any person. *Basic Inc. v. Levinson*, 485 U.S. 224, 235 n.13 (1988); 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b-5. The Commission need not prove any investors actually relied on the misrepresentations or that any investors have been harmed. The Commission need not prove loss, causation, reliance or damages as part of its claims pursuant to Section 10(b) and Rule 10b-5 thereunder. *SEC v. N. Am. Research & Develop. Corp.*, 424 F.2d 63, 84 (2d Cir. 1970); *SEC v. Simpson Capital Mgmt., Inc.*, 586 F. Supp. 2d 196, 201(S.D.N.Y. 2008); *SEC v. KPMG LLP*, 412 F. Supp. 2d 349, 375 (S.D.N.Y. 2006); *SEC v. Prater*, 296 F. Supp. 2d 210, 215 (D. Conn. 2003) (SEC is not required to allege or prove that investors relied on Defendants' misrepresentations); *SEC v. Credit Bancorp, Ltd*, 195 F. Supp. 2d 475, 490-91 (S.D.N.Y. 2002) ("The SEC does need to prove investor reliance, loss causation or damages in an action under Section 10(b) of the Exchange Act [and] Rule 10b-5.").

Violations of Section 17(a)(1), Section 10(b) and Rule 10b-5 require a showing of scienter; violations of Sections 17(a)(2) and 17(a)(3) do not. *Aaron v. SEC*, 446 U.S. 680, 685-86 n.5, 695-97 (1980); *SEC v. Monarch Funding Corp*., 192 F.3d 295, 308 (2d Cir. 1999); *SEC v. Universal Express, Inc.*, 475 F. Supp. 2d 412, 422 (S.D.N.Y. 2007).

### A. EIGH "Made" Statements Pursuant to Section 10(b) and Rule 10b-5(b) thereunder of the Exchange Act.

Section 10(b) and Rule 10b-5(b) thereunder prohibits "'mak[ing] any untrue statement of material fact' in connection with the purchase or sale of a securities." *Janus Capital Group v. First Derivative Traders*, 131 S. Ct. 2296, 2301 (2011) (quoting Section 10b-5(b)). In *Janus*, the Supreme Court held that "the maker of a statement is the entity with authority over the content of the statement and whether and how to communicate it." *Id.* at 2303. EIGH "made" misrepresentations and omissions through the various misstatements made in the press releases that it issued, which were attributed to the company, as well as the financial reports issued in its name.

### B. EIGH Obtained Money and Property Through Means of Its Direct Misstatements and By Means Of the Misstatements of Others in Violation of Section 17(a)(2).

EIGH made numerous direct misrepresentations through its various press releases and financial reports. Those press releases and reports had the effect of inflating the price of the stock of the company, which the CEO, Kelly and its agent, Bryant used to their advantage by selling the stock at a huge profit. Moreover, EIGH received money from those sales from Bryant. Thus, EIGH received money through the effects of its misrepresentation. *See SEC v. Stoker*, 865 F. Supp. 2d 457, 463 (S.D.N.Y. 2012) (sufficient if obtained money indirectly from fraud).

**C. The Statements Made by EIGH Were Material.**

A fact is material if a reasonable investor would view its disclosure as significantly altering the total mix of information in evaluating the merits of the investment. *Basic*, 485 U.S. at 231-32. A fact is material if it "may affect the desire of investors to buy, sell, or hold the company's securities," or if it "in reasonable and objective contemplation might affect the value of the corporation's stock or securities." *SEC v. Texas Gulf Sulphur Co.,* 401 F.2d 833, 849 (2d Cir. 1968), *cert. denied*, 394 U.S. 976 (1969); *Ganino v. Citizens Utils. Co.,* 228 F.3d 154, 161-62 (2d Cir. 2000) (a statement that an investor would have considered significant in making investment decisions). The misstatements made by EIGH to investors were material. The EIGH press releases and financial statements contained numerous misstatements that went directly to the financial condition of the company as well as its prospects for growth. The effect of those misstatements was to inflate the value of the company such that Kelly and Bryant could profit from the sale of its stock. *See supra* at 2-4.

**D. EIGH Employed Schemes that Violated Section 17(a)(1) & (3) and Section 10(b) and Rule 10b-5 Thereunder.**

To state a claim based on conduct that violates Rule 10b-5(a) and 10b-5(c), the Commission must allege that the defendant committed a deceptive or fraudulent act. *In re Global Crossing, Ltd. Sec. Litig.,* 322 F. Supp. 2d 319, 329 (S.D.N.Y. 2004). "It is apparent from Rule 10b-5's language and the case law interpreting it that a cause of action exists under subsections (a) and (c) for behavior that constitutes participation in a fraudulent scheme, even absent a fraudulent statement by the defendant." *Id*. at 335 (citations omitted). "The elements of an action for securities fraud under Section 10(b) of the Exchange Act (and Rule 10b-5 thereunder) and Section 17(a)(1) of the Securities Act are substantially the same under the Supreme Court's

precedents." *SEC v. Patel*, 2009 WL 3151143, at *21 (D.N.H. Sept. 30, 2009)(citations omitted).

EIGH violated Section 17(a)(1) and 17(a)(3), as well as Section 10(b) and Rule 10b-5(a) and (c), by its involvement in a scheme to inflate the value of its stock through the repeated issuance of false press releases and financial reports such that the stock's price was inflated, which inured to the benefit of its CEO and its agent.

**E. <u>EIGH Acted with Scienter.</u>**

Scienter is an element of the antifraud provisions of Section 17(a)(1) of the Securities Act and Section 10(b) of the Exchange Act, although scienter need not be shown to establish violations of Sections 17(a)(2) or 17(a)(3) of the Securities Act. *Aaron*, 446 U.S. at 691, 697. Scienter is a "mental state embracing the intent to deceive, manipulate or defraud." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n. 12 (1976). A plaintiff in a fraud action may plead scienter 'by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness.'" *Chill v. General Elec. Co.,* 101 F.3d 263, 268 (2d Cir. 1996) (citation omitted); *see also SEC v. U.S. Environmental, Inc.* 155 F.3d 107, 110 (2d Cir. 1998) (recklessness sufficient to prove scienter). "'[R]eckless conduct is, at the least, conduct which is highly unreasonable and which represents an extreme departure from the standards of ordinary care ... to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it.'" *Chill*, 101 F.3d at 29 (*quoting Rolf v. Blyth, Eastman Dillon & Co*., 570 F.2d 38, 47 (2d Cir. 1978)). A corporation's officers' state of mind is imputed to the corporation. *See SEC v. Treadway*, 430 F. Supp. 2d 293, 337-38 (S.D.N.Y. 2006).

EIGH acted with scienter. As alleged in the Complaint both Kelly and Bryant, acting on behalf of EIGH, knew that the press releases and financial reports were false when issued. Yet, EIGH continued to repeated issue those statements over the course of a year. Both Kelly's and

Bryant's knowledge is imputed to the Company for the purpose of scienter.

## II. THE COMMISSION IS ENTITLED TO THE RELIEF SOUGHT

### A. Permanent Injunction

Section 20(b) of the Securities Act, 15 U.S.C. § 77(t), and Section 21(d) of the Exchange Act, 15 U.S.C. § 78u(d), authorizes the Commission to seek injunctive relief upon a showing that (1) violations of the securities laws have occurred, and (2) a reasonable likelihood exists that violations will occur in the future. *See SEC v. Commonwealth Chem. Sec., Inc.*, 574 F.2d 90, 99-100 (2d Cir. 1978). Permanent injunctions against future violations of the securities laws may be issued as part of a judgment by default upon a finding by the Court that a factual basis for such relief exists. *See, e.g., SEC v Management Dynamics, Inc.*, 515 F.2d 801, 814 (2d Cir. 1975). In the context of a default judgment the "factual allegations of the complaint are taken as true" and, thus, "it is appropriate that the Court . . . enter findings of fact and conclusions of law." *SEC v. Interlink Data Network of Los Angeles, Inc.*, 1993 WL 603274, at *7 (C.D. Cal. Nov. 15, 1993).

To determine whether there is a reasonable likelihood that a defendant will commit future violations, courts generally consider: (i) the egregiousness of the conduct; (ii) the isolated or recurrent nature of the infraction; (iii) the degree of scienter involved; (iv) the sincerity of the defendant's assurances against future violations; and (v) the defendant's recognition of the wrongful nature of his conduct. *SEC v. Cavanaugh*, 155 F.3d 129, 135 (2d Cir. 1998); *SEC v. Amerindo Invest. Advisors, Inc.*, 2014 WL 2112032, * 13 (S.D.N.Y. May 6, 2014) *SEC v. Universal Major Indus. Corp.*, 546 F.2d 1044, 1048 (2d Cir. 1976); *see also SEC v. Manor Nursing Ctrs., Inc.*, 458 F.2d 1082, 1100-01 (2d Cir. 1972). Here, because the CEO's and agent's conduct is imputed to EIGH, the company repeatedly made false representations,

which were done with full knowledge of the falsity of statement. Bryant, then agent and now CEO is still litigating this action and does not admit fault. (Complaint ¶ 11; ECF 20, Bryant Response to Complaint.) Although the entity is dormant is shall has legal status and has the capacity to violate the securities laws in the future. *See Amerindo Invest. Advisors, Inc.*, 2014 WL 2112032, * 13 (court entered injunction when entity's inactive status outweighed by other factors).

**B. <u>Civil Money Penalty.</u>**

As authorized by Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d), and Section 21(d) of the Exchange Act, 15 U.S.C. § 78u(d), the Commission seeks civil penalties against EIGH. Civil penalties were enacted by Congress "'to achieve the dual goals of punishment of the individual violator and deterrence of future violations.'" *SEC v. Kenton Capital, Ltd.*, 69 F. Supp. 2d 1,17 (D.D.C. 1998) (quoting *SEC v. Moran*, 944 F. Supp. 286, 296 (S.D.N.Y. 1996)); *see also SEC v. Conaway*, 697 F. Supp. 2d 733, 747-48 (E.D. Mich. 2010) (Congress determined civil penalty necessary for effective deterrence). The legislative history of Section 21(d) reflects that Congress believed civil penalties were necessary because:

> [d]isgorgement merely requires the return of wrongfully obtained profits; it does not result in any actual economic penalty or act as a financial disincentive to engage in securities fraud. A violator who avoids detection is able to keep the profits resulting from illicit activities. Currently, even a violator who is caught is required merely to give back his gains with interest, leaving him no worse off financially than if he had not violated the law. The Committee therefore concluded that authority to seek or impose substantial money penalties, in addition to the disgorgement of profits, is necessary for the deterrence of securities law violations that otherwise may provide great financial returns to the violator.

H.R. Rep. No. 101-616 (1990), *reprinted in* 1990 U.S.C.C.A.N. 1379, 1384–86, 1990 WL 256464.

Section 20(d) of the Securities Act and Section 21(d) of the Exchange Act establish three tiers of penalties. 15 U.S.C. § 77t(d)(2); 15 U.S.C. § 78u(d)(3). *See generally SEC v. Rosenfeld*, 2001 WL 118612, at *4 (S.D.N.Y. Jan. 9, 2001). Of most relevance here, Section 20(d)(2)(C) of the Securities Act and Section 21(d)(3)(B)(iii) of the Exchange Act contemplates that a third tier penalty – which is the *greater* of gross pecuniary gain or $150,000 per violation for a person and $725,000 per violation for an entity[2] – is appropriate when "the violation . . . involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement; and . . . such violation directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons." 15 U.S.C. § 77t(d)(2)(c); 15 U.S.C. § 78u(d)(3)(B)(iii).

"The amount of the penalty shall be determined by the court in light of the facts and circumstances." 15 U.S.C. § 77t(d)(2)(A); 15 U.S.C. § 78u(d)(3). *See also SEC v. Pentagon Capital Mgmt. PLC*, 844 F. Supp. 2d 377, 427 (S.D.N.Y. 2012) (assessing penalty based on facts and circumstances), *aff'd rel. part* . 725 F.3d 279 (2d Cir. 2013). Courts have looked to the following factors, among others, to determine the reasonableness of a penalty: (1) the seriousness of the violations; (2) the defendant's scienter; (3) the repeated nature of the violations; (4) whether the defendant has admitted wrongdoing; (5) the losses or risk of losses caused by the conduct; (6) any cooperation provided to enforcement authorities; and (7) ability to pay. *SEC v. Rosenthal*, 426 Fed. Appx. 1, 4 (2d Cir. 2011); *SEC v. Converge Global, Inc.*, 2006 WL 907567, at *6 (S.D. Fla. Mar. 10, 2006); *SEC v. Cavanagh*, , 2004 WL 1594818, at *31 (S.D.N.Y. July 16, 2004); *SEC v. Lybrand*, 281 F. Supp. 2d 726, 730 (S.D.N.Y. 2003), *aff'd sub nom SEC v. Kern*, 425 F.3d 143 (2d Cir. 2005).

2 Although the statute originally provided for penalties of $100,000 for a person and $500,000 for an entity, those amounts have increased to $150,000 and $725,000 for violations after March 3, 2009, the time period for all the conduct charged against EIGH. *See* 17 C.F.R. § 201.1004.

Here, almost every factor supports a significant penalty against EIGH. As described above, there is no question EIGH engaged in serious violations of the federal securities laws by repeatedly issuing numerous false press releases and financial reports with the express purpose of causing investors to invest in a company under false pretenses. First, EIGH's scheme involved repeated misrepresentations over the period of a year. *See SEC v. Universal Express, Inc.,* 475 F. Supp. 2d 412, 426-27, 429 (S.D.N.Y. 2007) (third-tier penalties appropriate where "defendants engaged in numerous and inexcusable instances of securities law violations over the course of at least four years"), *aff'd, sub nom. SEC v. Altomare*, 300 Fed. Appx. 70 (2d Cir. 2008); *Lybrand*, 281 F. Supp. 2d, at 731 (third-tier penalties awarded) ("Far from being an isolated event, the actions of these men involved a multitude of improper securities transactions that occurred over several months – they violated the securities laws repeatedly and with regularity."); *SEC v. Global Telecom Servs, Inc.*, 325 F. Supp. 2d 94, 121 (D. Conn. 2004) (third-tier penalties awarded). The repeated nature of the violations suggests a high degree of scienter. EIGH's actions were not a one-time error in judgment but rather a regular pattern over the course of a year.

Moreover, EIGH violated the securities laws multiple times for purposes of calculating a penalty. Courts have determined that a "violation" encompasses each instance that a defendant has acted to violate the securities laws. *See, e.g., SEC v. Lazare Indus., Inc.*, 294 Fed. Appx. 711, 715 (3d Cir. 2008) (for purposes of assessing reasonableness of district court's assessment of $500,000 penalty, court considered each sale of unregistered stock as a separate violation); *SEC v. Colonial Inv. Mgmt. LLC*, 659 F. Supp. 2d 467, 503 (S.D.N.Y 2009) (using eighteen violations of the same regulation to calculate penalty); *SEC v. Coates*, 137 F. Supp. 2d 413, 428–29 (S.D.N.Y. 2001) (calculating penalty by multiplying number of misrepresentations by

statutory penalty amount); *SEC v. Todt*, 2000 WL 223836, at *12-13 (S.D.N.Y. Feb. 25, 2000) (assessing four second tier violations, one for each attempted sale of forged security); *Kenton Capital*, 69 F. Supp. 2d at 17 n.15 (assessing a third tier penalty of $1.2 million against defendant by multiplying the maximum statutory third tier penalty at the time ($100,000) by the number of investors who received misrepresentations (twelve)).

      Here, EIGH caused multiple "violations" for purposes of the Remedies Act.  Each time EIGH issued a press release or financial report could be considered a separate violation of Section 17(a) of the Securities Act and Section 10(b) of the Exchange Act.  Thus, even assuming that violating two provisions of the securities laws amounts to one violation, there could be as many as nine violations of the securities laws.  Thus the Commission seeks a penalty commensurate with the EIGH's conduct.

**CONCLUSION**

The Commission respectfully that this Court orders a permanent injunction against EIGH. In addition, the Commission seeks that this Court orders an appropriate penalty.

Respectfully submitted,

SECURITIES AND EXCHANGE COMMISSION

By its attorneys,

/s/ Deena R. Bernstein
Deena R. Bernstein (BBO # 558721)
33 Arch Street, 23rd Floor
Boston, Massachusetts 02110
Telephone: (617) 573-8813(Bernstein direct)
Facsimile: (617) 573-4590
E-mail: BernsteinD@sec.gov

Dated: October ___, 2014

**CERTIFICATE OF SERVICE**

I hereby certify that on November 3, 2014 I have served by ECF on all counsel of record. I have also served Jonathan Bryant in his personal capacity and as CEO of 8000, Inc. at his email address: jonathan@tbgfunds.com as well as his last known address below:

Wyresdale, Wrenbury Road, Aston,
Nantwich Cheshire, CW5 8DQ

/s Deena R. Bernstein
Deena R. Bernstein